# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
15 SEP -2 PM 3:36
CLERK-LAS CRUCES

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)    Case No. 15-569 mr
LG Metro PCS cellular telephone bearing IMEI )
014250-00-509538-8 )
CURRENTLY LOCATED AT DEA El Paso Office )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A attached hereto and incorporated by reference.

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B attached hereto and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841and 846 | Possession with Intent to Distribute a Controlled Substance; Conspiracy |

The application is based on these facts:
See Affidavit attached hereto and incorporated by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Antonia Dovalina, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-2-15

*Judge's signature*

City and state: Las Cruces, New Mexico

U.S. Magistrate Judge Carmen E. Garza
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Antonia Dovalina, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property - an electronic device as described in Attachment A - which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Drug Enforcement Administration (DEA) Special Agent assigned to the El Paso Field Division Office. I have been a Special Agent with the DEA since December 2005, during which time I have specialized in investigations involving narcotics trafficking. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, distribution, and importation of controlled substances, as well as methods used to finance narcotic transactions.

3.  I have participated in and supported narcotic investigations involving the illegal possession, sale, distribution and importation of many different types of controlled substances. I am familiar with the facts and circumstances of this investigation as result of my personal participation in the investigation, discussions with other agents who were involved in the investigation and review of reports written by other agents concerning the investigation. I have received on-the-job training using the Cellebrite system, which is used to download the digital contents of cellular telephones.

4.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.  The requested warrant would authorize the forensic examination of the Subject Property as described in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

6.  I believe that probable cause exists that the Subject Property will hold information and evidence relating to violations of 21 U.S.C. §§ 841 and 846 committed by Yolanda Gonzalez and other individuals.

## PROBABLE CAUSE

7.  At approximately 10:45 p.m. on July 26, 2015, Yolanda Gonzalez drove her gray Chrysler Sebring to the Border Patrol checkpoint at mile marker 26 on Interstate 25. She seemed frightened to the agent working primary inspection because her eyes were wide open and she was breathing heavily. With her was her adult daughter, Naira Gonzalez.

8.  When asked, Yolanda Gonzalez said that she was coming from visiting her father in Berino, New Mexico, and going to her home in Colorado. During the questioning, Yolanda Gonzalez began fidgeting in her seat and her voice shook. Due to her nervous behavior, the agent referred Yolanda Gonzalez to secondary inspection.

9.  During secondary inspection of the vehicle, a drug detection dog alerted. Agents saw that the driver's side fender had been tampered with and rigged to stay intact. When agents removed the front bumper, they were able to reach the battery, which looked new and showed signs of tampering. The top cover of the battery was not intact and easily removed. When an agent removed the battery top, he found a concealed compartment within the battery. Inside the

2

compartment were five bundles of suspected cocaine. The bundles weighed 2.72 kilograms and field tested positive for cocaine.

10. When agents told Yolanda Gonzalez about the cocaine, she said that someone had worked on the vehicle, that she had a blown tire, and that at a motel in El Paso, Texas, the night before an unknown male took the vehicle overnight.

11. Later, agents spoke with Naira Gonzalez, who stated as follows:

   a. They travelled to Berino two days earlier so that Naira's son could meet his grandparents. The Sebring's check engine light was on during their trip from Denver to El Paso.

   b. They could not find a motel room in New Mexico, so they found a room in El Paso on the morning of July 25.

   c. That evening, Yolanda Gonzalez asked family members in El Paso for a mechanic who would be willing to come check the vehicle. The next morning, an unidentified male knocked on their hotel door and handed Yolanda Gonzalez the keys to the car.

   d. They checked out of the hotel at noon on July 26 and then drove to Berino. They arrived in Berino at approximately 2:00 p.m.

   e. The check engine light came back on, and Yolanda Gonzalez asked her father, to check the battery. He was not able to disconnect the battery and to reset the check engine light because the bolts on the battery were stripped and the screw driver was unable to grasp the bolts.

   f. Yolanda Gonzalez then took the vehicle to an Auto Zone, and the mechanics conducted a computer diagnostics indicating that one of the sensors needed replacement. No replacements were done at the time.

   g. At approximately 9:00 that evening, the women began the drive back to Colorado.

12. Based on my training and experience, I know that individuals involved in drug trafficking often communicate with each other by phone in order to relay instructions, negotiate, and facilitate the movement of drugs. In addition:

3

   a. Individuals who participate in drug trafficking will often use cellular phones to store contact information related to those involved in illegal activities.

   b. Besides voice calls, drug traffickers maintain contact with associates through text messages.

   c. Further, individuals involved in the drug trafficking may store photographs of fellow narcotics smugglers or evidence of crimes in their cellular phone.

   d. A cache of contact information, dialed, received or missed calls, text messages sent, received or placed in draft status, and photographs can be found in cell phones.

13. The Subject Property was seized from Yolanda Gonzalez. Yolanda Gonzalez indicated that she used the Subject Property during her trip to and from Denver. Subject Property is a white in color LG Metro PCS phone in aqua/pink phone case with model number LGMS323, serial number 412CYXM509538 and IMEI 014250-00-509538-8.

14. The Subject Property is currently in the lawful possession of DEA. It came into DEA's possession when it was seized incident to arrest. The Subject Property is currently in storage at 660 S. Mesa Hills Dr., Suite 2000, in El Paso, Texas. In my training and experience, I know that the Subject Property has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Property first came into the possession of DEA.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. <u>Wireless telephone</u>: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice

4

communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. <u>Digital camera</u>: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. <u>Portable media player</u>: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. <u>PDA</u>: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and

5

utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. <u>IP Address</u>: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g. <u>Internet</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.lg.com/us/support-mobile/lg-LGMS323, I know that the Subject Property has capabilities that allow it to serve as a wireless telephone with a microSD card slot which supports up to 32GB of memory, phonebook entries up to 100 entries, geotagging and many other features available to smartphones. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

6

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Property was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Property because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Property consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Property to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Property described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Antonia Dovalina
DEA Special Agent

Subscribed and sworn to before me
on September 2, 2015:

Carmen E. Garza
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The Affidavit is submitted in support of warrants to search and retrieve information, more fully described in **Attachment B**, contained in the following electronic device: a white LG Metro PCS cellular telephone which was seized from Yolanda Gonzalez at the time of her arrest on July 27, 2015 (Subject Property). The Subject Property bears IMEI 014250-00-509538-8. The Subject Property is currently in the custody of the Drug Enforcement Administration in El Paso, Texas.

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 which are contained in the Subject Property, identified in **Attachment A**, namely:

1. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and identities stored in the Subject Telephones;

2. Digital, cellular, direct connect, and/or other phone numbers and identities dialed from, which contacted, or which are otherwise stored in, the Subject Telephones, along with the date and time each such communication occurred;

3. Text message logs and content stored in the Subject Telephones, whether sent from, to, or drafted on, the Subject Telephones, along with the date and time each such communication occurred;

4. The content of any and all voice mail messages accessible from the Subject Telephones, along with the date and time each such communication occurred;

5. Any photographs or videos stored in the Subject Telephones which are evidence of violations of 21 U.S.C. §§ 841(a)(1) or 846;

6. E-mail which has been synced to the Subject Telephones;

7. Evidence of user attribution showing who used or owned the Subject Telephones at the time the items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history; and

8. Any other electronic information stored in the Subject Telephones, which is evidence of violations of 21 U.S.C. §§ 841(a)(1) or 846.